IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) Civ. No. 10-315-SLR | |
| | ) | |
| CORDIS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

John W. Shaw, Esquire and Karen L. Pascale, Esquire of Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware.  Counsel for Plaintiffs.  Of Counsel:  Paul A. Bondor, Esquire of Desmarais LLP, New York, New York and Young J. Park, Esquire of Kirkland & Ellis LLP, New York, New York.

Steven J. Balick, Esquire, Tiffany Geyer Lydon, Esquire and Andrew C. Mayo, Esquire of Ashby & Geddes, Wilmington, Delaware.  Counsel for Defendant.  Of Counsel: Gregory Diskant, Esquire, Eugene Gelernter, Esquire, Kathleen M. Crotty, Esquire, and Diana Breaux, Esquire of Patterson Belknap Webb & Tyler LLP, New York, New York.

**MEMORANDUM OPINION**

Dated: April 13, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (together, "BSC") filed this action in the United States District Court for the District of Minnesota on December 4, 2009, alleging that defendant Cordis Corporation ("Cordis") willfully infringed claim 36 of United States Patent No. 5,922,021 ("the '021 patent") by manufacturing its 2.25 mm Cypher stent. (D.I. 1)  On April 16, 2010, the District of Minnesota transferred the case to this court. (D.I. 46)  Currently before the court are: (1) Cordis' motion to stay the trial on damages and willfulness pending reexamination of the '021 patent (D.I. 90); (2) Cordis' motion to submit a supplemental brief in support of its motion to stay pending reexamination (D.I. 153); (3) BSC's motion for summary judgment of infringement of the '021 patent (D.I. 111); (4) Cordis' motion for partial summary judgment on the date of hypothetical negotiation (D.I. 108); (5) Cordis' motion to exclude BSC's expert from relying on the outcome of the 03-027 case in her reasonable royalty analysis (D.I. 106); and (6) BSC's motion to preclude damages testimony from Cordis' expert based on incorrect hypothetical negotiations dates (D.I. 114).  This matter is currently scheduled for trial commencing on May 5, 2011.

## II. BACKGROUND

### A. The Parties and the Technology at Issue

Boston Scientific Corporation is a Delaware corporation with a principal place of business in Natick, Massachusetts. (D.I. 1 at ¶ 1)  Boston Scientific Scimed, Inc. is a Minnesota corporation with a principal place of business in Maple Grove, Minnesota. (*Id.* at ¶ 2)  Cordis is a Florida corporation with a principal place of business in

Bridgewater, New Jersey.  (*Id.* at ¶ 3)  The parties compete in the field of cardiovascular stents.  (*Id.* at ¶ 4)

A cardiovascular stent functions as scaffolding that is placed into a blocked artery in a crimped state on a balloon catheter.  ('021 patent at col. 1:42-52, 3:13-20)  The stent is then expanded by the balloon to either reopen the blocked artery or maintain the lumen of an artery that has previously been reopened by a balloon angioplasty procedure.  (*Id.*)  In the past, cardiovascular stenting procedures were performed with stents made of bare metal without any drug-polymer coating.  (D.I. 1 at ¶ 5)  Drug-eluting stents, which are bare metal stents with a drug-polymer coating intended to inhibit the re-growth of cells in the reopened vessel passageway, improved treatment dramatically by reducing the need for patients to receive repeated stenting procedures.  (*Id.* at ¶ 6)

On July 13, 1999, the United States Patent and Trademark Office (the "PTO") issued the '021 patent, titled "Intravascular Stent," to G. David Jang, M.D.  Claim 36 of the '021 patent claims a pattern of struts arranged in a specific manner on a stent, which provides the stents with their flexibility and scaffolding characteristics.  (D.I. 1 at ¶ 19)  Specifically, claim 36 of the '021 patent states:

> The stent of claim 24, wherein the first connecting strut proximal section is coupled to the second corner of the second expansion strut pair of the first expansion strut column, and the first connecting strut distal section is coupled to the first corner of the first expansion strut pair of the second expansion strut column, and the second connecting strut proximal section is coupled to the second corner of the fourth expansion strut pair of the first expansion strut column, and the second connecting strut distal section is coupled to the first corner of the third expansion strut pair of the second expansion strut column.

('021 patent at col. 22:42-52)  Claim 36 depends on claims 23 and 24, which are

2

directed at the design of the stent but do not reference the drug-polymer coating or the characteristics of the balloon attached to the stent. (*Id.* at col. 19:53 - 21:23)

### B. The 03-027 Case

On January 13, 2003, Cordis filed a patent infringement action against BSC and BSC counterclaimed, alleging that the Cordis Cypher and BX Velocity stents infringed claim 36 of the '021 patent. (D.I. 109 at 2; D.I. 129 at 4) The Cypher and BX Velocity stents have the same six-cell design which comes in 2.5 mm, 2.75 mm and 3.0 mm sizes,[1] but the Cypher stents have a drug-polymer coating which is not present in the BX Velocity stents. (D.I. 109 at 4-6; D.I. 129 at 6) In both the Cypher and the BX Velocity stent systems, a stent is mounted on a balloon that inflates to the various nominal diameters. (D.I. 109 at 6) Cordis first manufactured the BX Velocity stent in the United States in 1999 and received FDA approval to sell the Cypher stents in sizes ranging from 2.5 mm to 3.5 mm in 2003. (*Id.* at 5; D.I. 129 at 6)

In July 2005, the jury returned a verdict in favor of BSC, finding that Cordis' Cypher and BX Velocity stents infringed claim 36 of the '021 patent and that claim 36 was valid. (D.I. 1 at ¶ 11; D.I. 129 at 5) On September 24, 2007, this court upheld the jury verdict and entered judgment in favor of BSC. (D.I. 109 at 2-3) The Federal Circuit affirmed the judgment in March 2009,[2] and this court scheduled a jury trial on damages and willfulness for February 2010. (*Id.* at 3) Under a settlement agreement reached by the parties prior to the damages trial, Cordis received a license from BSC to make and

---

[1]The Cypher stent systems at issue in the 03-027 case also included 3.5 mm and 4.0 mm stent sizes, which use a seven-cell design. (D.I. 109 at 6)

[2]*See Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319 (Fed. Cir. 2009).

3

sell the BX Velocity and Cypher stents at issue in the 03-027 case. (*Id.*; D.I. 129 at 5)

## C. Prosecution History of the '021 Patent

On October 13, 2009, Cordis applied for *ex parte* reexamination of the '021 patent, which was granted by the PTO on December 17, 2009 based on substantial new questions as to the effect of various prior art references on the patentability of claims 23, 24 and 36 of the '021 patent.[3] (D.I. 109 at 3) On September 10, 2010, the examiner issued a non-final initial office action rejecting claims 23, 24 and 36 as obvious over the prior art. (*Id.* at 4) BSC responded to the rejection on December 10, 2010 and overcame it with no amendment to the claim language. (D.I. 151) Cordis filed a second request for reexamination on January 17, 2011. (*Id.*) On February 18, 2011, the PTO issued a non-final office action in the second reexamination proceeding, rejecting claim 36 as anticipated by U.S. Patent No. 5,807,404 ("the '404 patent") and as an obvious combination of the '404 patent and U.S. Patent No. 5,733,303. (D.I. 153, Ex. A)

## D. The Accused Product

Only Cordis' 2.25 mm Cypher stent is at issue in the instant case. Cordis' 2.25 mm Cypher stent was first manufactured for commercial use on August 18, 2009. (D.I. 113, Ex. 6 at 52:3-18) Cordis obtained FDA approval and began selling the 2.25 mm Cypher stent in the United States in September 2009. (D.I. 109 at 5; D.I. 113, Ex. 6 at 49:14 - 50:3, 52:3-18; D.I. 126 at 5) The stent used in the 2.25 mm Cypher stent

---

[3]Specifically, Cordis challenged the validity of claim 36 of the '021 patent as obvious in light of U.S. Patent No. 6,348,065 and U.S. Patent No. 6,203,659. (D.I. 90, Ex. 1)

4

system is identical to the six-cell stent used in most of the Cypher stents accused of infringement in the 03-027 case, but it is mounted on a balloon that inflates to a nominal diameter of only 2.25 mm. (D.I. 109 at 5-6; D.I. 129 at 8-9)

Although Cordis submitted its application for FDA approval of all of the Cypher stents at the same time in June 2002, the FDA required Cordis to submit a supplemental application for the 2.25 mm stent with additional clinical data. (D.I. 109, Ex. 8 at 35:20-36:9; D.I. 130, Ex. G at 6-7) Experts for both parties testified as to the unique role that 2.25 mm drug-eluting stents play in the treatment of coronary artery disease. (D.I. 129 at 7) Specifically, Dr. Steven Goldberg explained that 2.25 mm drug-eluting stents "provide an important option for the treatment of small coronary arteries" because of the particular challenges that treating small coronary arteries present. (D.I. 130, Ex. N at ¶ 33) Dr. Daniel Simon likewise testified that he would prefer to use a 2.25 mm Cypher stent in treating 2.0 mm vessels. (*Id.*, Ex. P at 126:3-11; 139:17-19) BSC and Cordis are the only suppliers of 2.25 mm drug-eluting stents on the market. (D.I. 129 at 7)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that

could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Stay of Litigation Pending Reexamination

Motions to stay invoke the broad discretionary powers of the court. *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (citing *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976)). Three general factors inform the court in this regard:

6

> (1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party; (2) whether a stay will simplify the issues for trial; and (3) whether discovery is complete and a trial date set.

*Enhanced Security Research, LLC v. Cisco Sys., Inc.*, Civ. A. No. 09-571, 2010 WL

2573925, at *3 (D. Del. June 25, 2010) (citing *St. Clair Intellectual Prop. Consultants v.*

*Sony Corp.*, Civ. A. No. 01-557-JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003)).

Concurrent litigation and reexamination proceedings present novel issues to the

timely and efficient disposition of patent infringement disputes.  While allowing the PTO

to determine reexamination-specific issues of validity may potentially obviate a multi-

issue patent litigation and conserve finite judicial resources, this district carefully

considers whether "there is 'even a fair possibility' that the stay would work damage on

another party" in the reexamination context.  *Dentsply Int'l*, 734 F. Supp. at 658 (internal

citations omitted).  Upon balance of the aforementioned factors, as explained *infra*, the

court concludes that Cordis' motion does not warrant the grant of a stay.

**1.  Status of litigation**.  Discovery in this action is complete, and trial is

scheduled to commence on May 5, 2011.  The status of the litigation clearly cuts

against a stay.

**2.  Simplification**.  There is a possibility that claim 36 of the '021 patent

may be modified or canceled by the PTO during the pendency of the case.  If the PTO

were to reject or modify claim 36, it would eliminate the need for a trial.  "However, it is

also possible that the PTO's determination will have no ultimate bearing on the

damages determination in this case, as the PTO's initial actions were non-final and

7

non-binding, and the PTO is free to reconsider its initial determinations prior to issuing a reexamination certificate." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2007 WL 1655625, at *4 (N.D. Cal. 2007) (citing *In re Bass*, 314 F.3d 575, 577 (Fed. Cir. 2002)). A final determination by the PTO could take years, and trial is imminent in this case. As a result, this factor weighs against a stay of the litigation.

      **3. Prejudice**. The court examines several factors in determining whether the imposition of a stay will result in prejudice upon BSC, including the timing of the request for reexamination, the timing of the request for stay, the status of the reexamination proceedings and the relationship of the parties.

      **a. Timing of the request for reexamination**. Cordis filed its initial request for reexamination on October 13, 2009, two months before BSC filed this suit on December 4, 2009, but several years after the end of the jury trial in the 03-027 case in which Cordis' liability for infringement of claim 36 of the '021 patent was established. Cordis asserted several invalidity theories regarding claim 36 during the 03-027 case and could have requested a reexamination at any time after this court issued its claim construction opinion in March 2005. However, Cordis delayed its request for reexamination until October 2009, after all of its judicial options were exhausted and the 2.25 mm Cypher stent had been launched in the U.S. Therefore, this factor weighs against a stay of the litigation.

      **b. Timing of the request for stay**. Cordis' motion for stay was filed on September 23, 2010, nearly one year after the untimely request for reexamination was made. As noted above, a trial date had been set and fact discovery

was complete at the time Cordis filed its motion for stay.  (D.I. 59)  This factor also weighs against a stay.

    **c. Status of reexamination proceedings**.  Reexamination is an arduous process fraught with the potential for multiple appeals.  According to statistics published by the PTO, an *ex parte* reexamination conducted by the Central Reexamination Unit (or "CRU") has a historical average pendency of 25.4 months.[4] Here, the reexamination is just beginning, and could take years to complete.  Although the PTO has issued two non-final office actions rejecting claim 36 of the '021 patent, BSC overcame the first rejection without amending the claim language and still has an opportunity to respond in the second reexamination proceeding.  No final rejection has been issued, and there is no argument scheduled before the Board of Patent Appeals and Interferences (the "BPAI").  The status of the reexamination weighs against a stay.[5]

    **d. The relationship of the parties**.  Of particular importance is the fact that BSC and Cordis are direct competitors in the 2.25 mm drug-eluting stent market.  In fact, BSC and Cordis are the only stent manufacturers permitted by law to market drug-eluting stents for use in coronary arteries less than 2.50 mm in diameter. (D.I. 101, Ex. E at 33:3-19)  Courts are generally reluctant to stay proceedings where

---

[4]*See* http://www.uspto.gov/patents/EP_quarterly_report_June_30_2010.pdf.

[5]Commentators have observed that *ex parte* reexamination appeals took anywhere from 79 to 739 days from BPAI docketing to decision in 2009, with an average of 234 days to decision.  *See* http://reexamcenter.com/wp-content/uploads/2010/01/Appeals-from-the-Central-Reexa mination-Unit2.pdf.  It may take an additional fifteen (15) months to appeal a BPAI decision to the Federal Circuit. (*Id.* at pp. 20-21)

the parties are direct competitors.[6] Because the parties directly compete in the 2.25 mm drug-eluting stent market, this factor disfavors a stay.

Upon balance, the factors discussed *supra* favor BSC and the court, therefore, is not inclined to grant a stay. For the foregoing reasons, the court denies Cordis' motion to stay the litigation.

### B. Infringement

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a). A two-step analysis is employed in making an infringement determination. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). First, the court must construe the asserted claims to ascertain their meaning and scope. *Id.* Construction of the claims is a question of law subject to de novo review. *See Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). The trier of fact must then compare the properly construed claims with the accused infringing product. *Markman*, 52 F.3d at 976. This second step is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

"Direct infringement requires a party to perform or use each and every step or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm.*

---

[6]*See Nidec Corp. v. LG Innotek, Co.*, 2009 WL 3673433, at * 4 (E.D. Tex. Apr. 3, 2009); *O2 Micro Int'l Ltd. v. Beyond Innovation*, 2008 WL 4809093, at *2 (E.D. Tex. Oct. 29, 2008).

*Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).  If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon.  *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).  A product that does not literally infringe a patent claim may still infringe under the doctrine of equivalents if the differences between an individual element of the claimed invention and an element of the accused product are insubstantial.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 24 (U.S. 1997).  The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence.  *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted).

In support of its motion for summary judgment of infringement, BSC contends that collateral estoppel bars Cordis from arguing that its 2.25 mm Cypher stent does not infringe claim 36 of the '021 patent due to the outcome of the 03-027 case.  (D.I. 112 at 5-6)  Cordis does not dispute the infringement of claim 36.  (D.I. 125 at 4)

The court concludes that the 2.25 mm Cypher stent infringes claim 36 of the '021 patent as a matter of law.  The evidence demonstrates that the 2.25 mm Cypher stent accused of infringement in this case has the same stent architecture as the 2.5 mm, 2.75 mm and 3.0 mm Cypher stents that were found to infringe claim 36 in the 03-027 case.  Specifically, Cordis concedes that the stent structure is identical in its discovery responses, confirming that "[t]he 2.25 mm diameter Cypher stent has a six circumferential cell geometry as is the case with the 2.50 mm, 2.75 mm and 3.0 mm diameter Cypher stents."  (D.I. 113, Ex. 4, Ex. 7 at 4)  Moreover, Cordis' expert, Vincent A. Thomas ("Thomas"), states that "[t]he 2.25 mm Cypher stent was a line extension of

11

the Cypher product, using the exact same bare-metal stent platform (the 6-cell BX Velocity stent) as the 2.5 mm - 3.0 mm Cypher stents, mounted on a 2.25 mm nominal balloon delivery system." (D.I. 113, Ex. 8 at 9)  For these reasons, the court concludes as a matter of law that Cordis' 2.25 mm Cypher stent infringes claim 36 of the '021 patent.

## C. Date of Hypothetical Negotiation

The Federal Circuit has described a reasonable royalty as "the amount that a person, desiring to manufacture [, use, or] sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make [, use, or] sell the patented article, in the market, at a reasonable profit." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006) (internal quotations omitted). In the absence of an established royalty, a reasonable royalty is calculated based upon hypothetical negotiations between a willing licensor and a willing licensee when the infringement began. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1318 (Fed. Cir. 2010).  Infringement begins when both the patent has issued and the accused products are sold.  *See Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 869 (Fed. Cir. 1993).

In support of its motion for partial summary judgment on the date of the hypothetical negotiation, Cordis contends that it began making stents in the United States with the Cypher and BX Velocity design in 1999. (D.I. 109 at 9)  According to

12

Cordis, the date of infringement should be calculated based on the initial marketing of these earlier products because the parties agree that the 2.25 mm Cypher stent and the other Cypher and BX Velocity stents are equivalent for purposes of claim 36 of the '021 patent. (*Id.* at 9-13) In the alternative, Cordis contends that the correct date for the hypothetical negotiation cannot be later than January 2002, which is the date Cordis began making Cypher stent systems in the United States. (*Id.* at 13) In response, BSC contends that the hypothetical negotiation date should be September 2009, which is when Cordis obtained FDA approval of the 2.25 mm Cypher stent and began to sell it in the United States. (D.I. 129 at 10) According to BSC, it would be improper to relate the date of hypothetical negotiation back to the date Cordis began selling infringing products in a separate litigation involving the same patent. (*Id.* at 11)

Both parties agree that the date of hypothetical negotiation should be calculated based upon the date when the infringement began. The only dispute between the parties regarding the date of hypothetical negotiation turns on whether the infringement began in 1999, when the stent reflected in claim 36 of the '021 patent was first marketed in the United States, or whether the infringement began in September 2009, when the 2.25 mm Cypher stent presently at issue was first marketed in the United States. The court finds the Federal Circuit's decision in *Applied II* to be instructive in this regard. In *Applied II*, the patent infringer argued that the royalty rate should be identical to the royalty rate in a previous infringement action involving related claims of the same patent due to the "uninterrupted continuation of the infringement." 435 F.3d at 1360. The Federal Circuit emphasized that two separate instances of infringement

13

had occurred, concluding that "simply because the **same** company sold two **different** products which infringed a patent does not prevent the patentee from litigating and collecting **separate** damages for **each** infringement." *Id.* at 1362 (emphasis in original). The Federal Circuit explained that, because the sales of two different products caused two infringements beginning at different times, two separate hypothetical negotiation dates were required:

> [T]he hypothetical negotiation relates to the date of first infringement. There is nothing to suggest that we should tie a hypothetical negotiation to a prior infringement no longer at issue. Here, the hypothetical negotiation date for infringing sales of Versaport II relates to the infringement caused by Versaport II sales beginning in 1997, not the past infringement caused by Versaport I sales beginning in 1994.

*Id.* at 1363-64.

In the case at bar, it is undisputed that the 2.25 mm Cypher stent infringes claim 36 of the '021 patent for the same reasons that the Cypher and BX Velocity stents were found to infringe claim 36. However, the evidence overwhelmingly indicates that the 2.25 mm Cypher stent is distinct from the Cypher and BX Velocity stents previously marketed by Cordis. Specifically, BSC presented evidence in the form of FDA approval procedures, market structure for small vessel stents and expert testimony to show that sales of the 2.25 mm Cypher stent constituted a separate act of infringement. (D.I. 130, Ex. C at 8, Ex. D at 19, Ex. F at 49:14 - 50:3, Ex. G at 4-7, Ex. H at 35:20 - 36:9, Ex. L, Ex. N at ¶¶ 33, 40, Ex. P at 126:3-11) Based on the evidence presented by BSC and Federal Circuit precedent, the court concludes that no genuine issues of material fact exist and, as a matter of law, the infringement caused by the 2.25 mm Cypher stent is separate and distinct from the infringement caused by the Cypher and BX Velocity

14

stents previously marketed by Cordis.

Moreover, the parties do not dispute the fact that the 2.25 mm Cypher stent was first sold in the United States in September 2009. (D.I. 130, Ex. B) Federal Circuit case law establishes that the date of first infringement is calculated based on "when both a patent had issued and accused products were sold." *See Wang Labs.*, 993 F.2d at 869 (where infringing products were being sold on date of issuance of patent, hypothetical negotiations "should have been considered to have occurred on the patent issuance date"); *see also Applied II*, 435 F.3d at 1364 (relating the hypothetical negotiation date to the infringement caused by Versaport II sales beginning in 1997); *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1257 (Fed. Cir. 2005) (start of infringement occurs when both a patent has issued and accused products are sold). Having concluded that the infringement caused by the 2.25 mm Cypher stent cannot be conflated with the infringement caused by the previous Cypher and BX Velocity stents under Federal Circuit case law, the court concludes that the date of first infringement must be September 2009 as a matter of law. Therefore, the court shall deny Cordis' motion for summary judgment regarding the date of hypothetical negotiation.

In light of the analysis above, the court shall grant summary judgment sua sponte in favor of BSC with respect to its proffered September 2009 date of hypothetical negotiation. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261 (3d Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). The notice requirement is satisfied if "the targeted party had reason

15

to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Gibson v. City of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2004) (quoting *Leyva v. On the Beach, Inc.*, 171 F.3d 717, 720 (1 st Cir. 1999)) (internal quotations omitted). The Third Circuit has recognized an exception to the notice requirement when the following conditions are present: "(1) the point at issue is purely legal; (2) the record was fully developed[;] and (3) the failure to give notice does not prejudice the party." *Gibson*, 355 F.3d at 219. This court has held that when one party moves for summary judgment against an adversary, "Fed. R. Civ. P. 54(c) and 56, when read together, give the court the power to render a summary judgment for the adversary if it is clear that the case warrants that result, even though the adversary has not filed a cross-motion for summary judgment." *Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.*, 510 F. Supp. 2d 356, 362 (D. Del. 2007).

The court concludes that, by moving for summary judgment regarding the date of hypothetical negotiations, Cordis should have been on notice that the court would consider granting summary judgment in favor of BSC based on the September 2009 date of hypothetical negotiations. Instead of arguing that genuine issues of material fact are in dispute with respect to the date of hypothetical negotiations, BSC's answering brief alludes to the fact that only its proffered hypothetical negotiation date could be accepted by the court as a matter of law. (D.I. 129 at 11) ("Because Cordis could not sell the 2.25 mm Cypher stent in the United States until it first obtained approval from the FDA on September 21, 2009, the hypothetical negotiation date could not have been earlier.") BSC's motion to exclude the testimony of Cordis' expert with respect to the date of hypothetical negotiation also suggests that BSC believed the date

16

of hypothetical negotiation could be determined as a matter of law in its favor. (D.I. 115 at 2) ("Mr. Thomas's reasonable royalty opinions based on either a hypothetical negotiation date of July 1999 or January 2002 are, as a matter of law, improper.") These circumstances, combined with a review of well-established Federal Circuit case law, should have put Cordis on notice that the court might reach the opposite conclusion with respect to its proffered date of hypothetical negotiation. *See Sunbeam Prods., Inc. v. HoMedics, Inc.*, 2010 WL 5230892, at \*6 (Fed. Cir. Dec. 15, 2010) (finding that granting summary judgment in favor of defendant should have come as no surprise to plaintiff, who had notice that the court was considering adjudicating the dispute without trial because plaintiff itself sought summary judgment of infringement); *see also Telecris Biotherapuetics*, 510 F. Supp. 2d at 362.

Even if Cordis were not sufficiently notified that the court might grant summary judgment in favor of BSC based on Cordis' motion for summary judgment and BSC's response thereto, the exception to the notice requirement applies in this case. The parties' dispute does not center on the facts, but rather presents a legal question on a fully developed, undisputed record. Specifically, the parties dispute whether this is a case involving one continuous act of infringement or whether the infringement caused by the 2.25 mm Cypher stent represents an act of infringement separate and distinct from the earlier acts of infringement by the Cypher and BX Velocity stents. This issue was considered and resolved by the Federal Circuit in *Applied II*. The parties do not dispute the fact that the 2.25 mm Cypher stent is identical to the other stents for purposes of claim 36 of the '021 patent, nor do they dispute the fact that the 2.25 mm Cypher stent was first sold in the U.S. in September of 2009. Moreover, Cordis will not

17

be prejudiced by the court's failure to give notice because Cordis had the opportunity to reply to BSC's answering brief and presented thirteen exhibits in connection with its motion for summary judgment, indicating that it presented a fully developed record in support of its motion for the court's review. (D.I. 109; D.I. 137) As a result, the court concludes that granting summary judgment sua sponte is appropriate.

### D. *Daubert* Motions

The function of the court under Fed. R. Evid. 702 is to make a preliminary assessment of whether the underlying reasoning or methodology of the proffered expert testimony is scientifically valid and properly can be applied to the facts at issue. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). This gate-keeping function of the court was never meant to supplant the adversarial trial process. The fact that experts disagree as to methodologies and conclusions is not grounds for excluding relevant testimony.

#### 1. Testimony of Mary Woodford

In support of its motion to exclude BSC's expert from relying on the outcome of the prior 03-027 case in her reasonable royalty analysis, Cordis contends that Mary Woodford's ("Woodford") reasonable royalty analysis suffers from two fundamental flaws. (D.I. 107 at 1) Specifically, Cordis contends that BSC incorrectly uses September 2009 as the date for the hypothetical negotiation instead of the 1999 date for the reasons explained in support of Cordis' motion for partial summary judgment. (*Id.*) Second, Cordis contends that, instead of basing her reasonable royalty analysis on the value of the '021 patent or its contribution to the Cypher stent, Woodford

18

improperly relies on evidence that relates to BSC's allegations of willfulness regarding the outcome of the 03-027 case, which is not relevant to any of the *Georgia-Pacific* factors. (*Id.* at 9-11; D.I. 138 at 1-2)  In response, BSC contends that Cordis' knowledge of the prior infringement judgment in the 03-027 case is probative of the value of the '021 patent, the availability of non-infringing alternatives and the parties' bargaining power.  (D.I. 127 at 2)  BSC contends that the methodology used by Woodford to calculate her reasonable royalty is supported by *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008), in which the Federal Circuit determined that a judgment of infringement would affect the parties' bargaining position in a hypothetical negotiation.  (*Id.* at 8)

The court concludes that Woodford's methodology meets the requirements of Fed. R. Evid. 702.  Specifically, Woodford looked to factor 13 of the *Georgia-Pacific* factors[7] to determine the impact of the judgment in the 03-027 case, concluding that the judgment strengthened BSC's bargaining position in the hypothetical negotiation and demonstrated the business need and market niche for the 2.25 mm Cypher stent.  (D.I. 128, Ex. E at 31-32, 35)  These considerations are relevant to the reasonable royalty analysis separate and apart from the willfulness analysis, even though overlapping evidence may be used to support both.  Moreover, Woodford based her hypothetical negotiations analysis on a September 2009 date, which was accepted by this court as a matter of law.  *See* discussion *supra* Part IV.B.  The court concludes that Cordis has

---

[7]"The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer." *Georgia-Pacific*, 318 F. Supp. at 1120.

19

failed to establish grounds for excluding Woodford's testimony under *Daubert*.

## 2. Testimony of Vincent A. Thomas

In support of its motion to preclude damages testimony from Thomas based on

incorrect hypothetical negotiation dates, BSC contends that Thomas' reasonable royalty

opinions based on hypothetical negotiation dates of either July 1999 or January 2002

are improper as a matter of law.  (D.I. 115 at 2)  According to BSC, the Federal Circuit

rejected Thomas's attempt to rely on a hypothetical negotiation date based on products

infringing the same patent at an earlier time and in a separate litigation in *Applied II*.

(D.I. 115 at 9-10)  In response, Cordis contends that its expert is correct in using a 1999

or 2002 date for the hypothetical negotiation of the 2.25 mm Cypher stent because the

stents at issue in the 03-027 case are identical to the 2.25 mm Cypher stent for

purposes of claim 36 of the '021 patent.  (D.I. 126 at 7-8)

Having determined that, as a matter of law, the proper date of hypothetical

negotiation is September 2009, the court concludes that expert testimony regarding

hypothetical negotiation dates of 1999 or 2002 shall not be admitted.

## V. CONCLUSION

For the foregoing reasons, the court:  (1) denies Cordis' motion to stay trial on

damages and willfulness pending reexamination (D.I. 90); (2) denies as moot Cordis'

motion to submit a supplemental brief in support of its motion to stay pending

reexamination (D.I. 153); (3) grants BSC's motion for summary judgment of

infringement (D.I. 111); (4) denies Cordis' motion for partial summary judgment on the

date of the hypothetical negotiation (D.I. 108); (5) grants summary judgment sua sponte

in favor of BSC regarding the date of hypothetical negotiation; (6) denies Cordis' motion to exclude BSC's expert from relying on the outcome of the prior 03-027 case in her reasonable royalty analysis (D.I. 106); and (7) grants BSC's motion to preclude damages testimony based on incorrect hypothetical negotiation dates (D.I. 114).  An appropriate order shall issue.