IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CORDIS CORPORATION, <br> Defendant. | ) <br> ) **Redacted - Public Version** <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 10-315-SLR-MPT <br> ) <br> ) <br> ) <br> ) |

**BSC'S OPPOSITION TO CORDIS'S PROFFER REGARDING
THE TESTIMONY OF DR. CAMPBELL ROGERS**

*Of Counsel*:

Paul A. Bondor
**DESMARAIS LLP**
230 Park Avenue
New York, New York 10169
(212) 351-3400

Young J. Park
Jeanne M. Heffernan
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
John W. Shaw (#3362)
Karen L. Pascale (#2903)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
kpascale@ycst.com

*Attorneys for Plaintiffs,
Boston Scientific Corporation
and Boston Scientific Scimed, Inc.*

April 25, 2011

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................3

I. As Its Proffer Reveals, And The Reports From Its Own Experts Confirm, Cordis Plans To Solicit Undisclosed Expert Testimony From Dr. Rogers At Trial .......................3

II. Dr. Rogers Should Not Be Permitted To Testify Regarding His Interpretation Of Clinical Data Because It Does Not Relate To His Designated Trial Topics .....................6

    A. Testimony Regarding Dr. Rogers's Interpretation Of Clinical Data Is Not Relevant To "The Design And Development Of The 2.25mm Cypher Stent" ...........................................................................................................6

    B. Testimony Regarding Dr. Rogers's Interpretation Of Clinical Data Is Not Relevant To Cordis's Decision To Launch The 2.25mm Cypher Stent .................9

III. Dr. Rogers Should Not Be Permitted To Testify Regarding The Data That Cordis Provides To Physicians Regarding The Cypher Stent .......................................................11

CONCLUSION ..............................................................................................................................12


# TABLE OF AUTHORITIES

**Page**

**Cases**

*DIJO, Inc. v. Hilton Hotels Corp.*,
351 F.3d 679 (5th Cir. 2003) ............................................................................................. 4

*Hirst v. Inverness Hotel Corp.*,
544 F.3d 221 (3d Cir. 2008) ........................................................................................... 3, 4

*LifeWise Master Funding v. Telebank*,
374 F.3d 917 (10th Cir. 2004) .......................................................................................... 4

*Stelwagon Mfg. Co. v. Tarmac Roofing Sys. Inc.*,
63 F.3d 1267 (3d Cir. 1995) ............................................................................................. 8

*Teen-Ed, Inc. v. Kimball Int'l, Inc.*,
620 F.2d 399 (3d Cir. 1980) ............................................................................................. 4

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................ 2, 3, 5

Fed. R. Evid. 701 .................................................................................................................... 3

## INTRODUCTION

Plaintiffs Boston Scientific Corp. and Boston Scientific Scimed, Inc. (collectively, "BSC") respectfully submit this opposition to Cordis Corporation's ("Cordis's") proffer (D.I. 165), which describes the anticipated trial testimony of Dr. Campbell Rogers. The proffer confirms the suspicion that was raised with the Court at the Final Pretrial Conference — Cordis is trying to ambush BSC with expert opinion testimony from someone it designated as a *fact witness*, without prior disclosure of those opinions, as required by the Federal Rules.

In its Second Amended Initial Disclosures Pursuant to Rule 26(a)(1) ("Second Amended Initial Disclosures"), Cordis identified Dr. Rogers as a *fact witness*. (Ex. 1 at 3) Cordis attempted to lull BSC into believing that Dr. Rogers would only provide fact testimony by describing the subject matter of his testimony as the "[d]esign and development of the 2.25mm Cypher stent, and Cordis's reasons for introducing the 2.25mm Cypher stent." (*Id.* at 3) Cordis's proffer, however, reveals that Cordis intends to go well beyond that benign description. From Dr. Rogers, Cordis seeks to offer surprise expert opinion testimony. Relying on his medical background, Cordis will seek to have Dr. Rogers testify regarding his interpretation of clinical data obtained by others and his beliefs of how *other physicians* would view the available options for the treatment of small vessel disease, *e.g.*, the use of 2.25mm drug-eluting stents.

Cordis seeks to elicit this expert opinion testimony from Dr. Rogers even though it already has two other medical experts that will provide similar testimony. For example, according to his expert report, Cordis's medical expert, Dr. Daniel Simon, will discuss *all* of the same scientific articles cited in Dr. Rogers's proffer as well as the treatment options available for small vessel disease. Cordis's hidden trial strategy appears to include buttressing the expert testimony of Drs. Simon and Buller by having yet another expert, Dr. Rogers, repeat their testimony.

The Court should reject the myriad excuses Cordis offers to justify its proffer of expert opinion testimony from Dr. Rogers. Indeed, the manner in which Cordis tries to support its proffer confirms the prejudice that BSC will suffer if Dr. Rogers's testimony is permitted. As part of its proffer last week, Cordis included slide presentations, said to have been given by Dr. Rogers, related to various clinical studies. But Cordis *first produced those materials to BSC on April 20, 2011, only in connection with its proffer, and only two weeks before the start of trial.* (D.I. 165, Exs. 3, 4, 5) Though Cordis argues, in summary fashion, that interpretation of clinical data is part of Dr. Rogers's job, Dr. Rogers had no hand in generating any of the data on which he is now proffered to opine. On the contrary, Cordis intends to use Dr. Rogers as a conduit for hearsay: but just because Dr. Rogers may review clinical data generated by others in his line of work, it does not give Cordis an unfettered license to ignore Federal Rule 26(a)(2), this Court's scheduling order, and FRE 701 in order to elicit surprise expert opinion testimony at trial.

Because Cordis did not disclose Dr. Rogers's expert testimony as required by the Federal Rules and the Court's scheduling order, Cordis should be precluded from proffering expert opinion testimony from Dr. Rogers, including:

- Testimony regarding interpretation of clinical data, including interpretation of the articles attached as Exhibits 9 to 14 to Cordis's proffer ("Articles 9 to 14");[1]

- Testimony regarding the options available to physicians for treating small vessel disease (including other competitive products about which Dr. Rogers has no personal knowledge); and

- Testimony regarding discussions of clinical data and treatment options that Dr. Rogers or others at Cordis have had with other people.

Permitting such testimony would prejudice BSC and clutter the trial with previously undisclosed (and, as discussed below, presumably cumulative) testimony. Because Cordis

---

[1] Articles 9 to 14 are scientific articles reporting and discussing results from various clinical trials relating to drug-eluting stents.

2

disregarded the Court's scheduling order and the disclosure requirements of Federal Rule 26 (a)(2), BSC had no notice of the expert opinion testimony that Cordis plans to elicit at trial. With trial set to begin in 10 days, allowing Dr. Rogers to testify as described in Cordis's proffer would reward Cordis's efforts to subvert the rules governing disclosure of expert opinion testimony by not giving BSC a full and fair opportunity to prepare a rebuttal to that testimony at trial.

## ARGUMENT

### I. As Its Proffer Reveals, And The Reports From Its Own Experts Confirm, Cordis Plans To Solicit Undisclosed Expert Testimony From Dr. Rogers At Trial

Dr. Rogers should be precluded from providing testimony regarding: (1) his interpretation of clinical data, including the data contained in Articles 9 to 14, which, in turn, relate to clinical trials in which Dr. Rogers did not participate; and (2) the options available to physicians for treatment of small vessel disease with reference vessels less than 2.50mm in diameter, which would be based on his specialized background in medicine. Federal Rule of Evidence ("FRE") 701, in pertinent part, provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are . . . (c) ***not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.***

FRE 701 (emphasis added).

According to the Third Circuit, "admissible lay opinion testimony must 'not [be] based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 227 (3d Cir. 2008). The *Hirst* court recognized that "[s]ubsection (c) of Rule 701 was added to 'eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing' and to 'ensure[ ] that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert

3

witness in the guise of a layperson.'" *Id.* (citing FRE 701 Advisory Committee's Note). Cordis is trying to evade the disclosure requirements of Rule 26 with Dr. Rogers.

The single case on which Cordis relies, *Teen-Ed, Inc. v. Kimball Int'l, Inc.*, does not support permitting the proposed opinion testimony from Dr. Rogers. 620 F.2d 399 (3d Cir. 1980). First, the *Teen-Ed* court relied on an earlier version of Rule 701, which did not contain subsection (c), *i.e.*, the relevant subsection of this discussion. *Id.* at 403. Second, other Circuits have distinguished the *Teen-Ed* decision on the grounds that the disputed lay opinion of the accountant in that case "was based on [his] **personal knowledge** of [plaintiff's] balance sheets, which [the accountant] had acquired *first-hand* as [plaintiff's] accountant and bookkeeper." *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 686 (5th Cir. 2003) (emphasis added); *see also LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929-30 (10th Cir. 2004) (determining that "the owners offered valuations based on straightforward, common sense calculations" from an accountant with personal knowledge of the underlying sales figures). Indeed, in *DIJO*, the Fifth Circuit held that the district court abused its discretion by allowing a financial consultant designated as a fact witness to provide opinions based on information he had no hand in creating. *DIJO*, 351 F.3d at 686-87 (noting that "this was not a close evidentiary call").

Unlike in *Teen-Ed*, the testimony Cordis seeks to introduce through Dr. Rogers is unquestionably expert opinion testimony. For example, Cordis seeks to offer testimony from Dr. Rogers regarding treatment options for small vessel disease (D.I. 165 at 6) even though Dr. Rogers does not remember ever implanting a 2.25mm drug-eluting stent in a patient. (*Id.*, Ex. 2 at 25:8-19) Cordis also seeks to offer testimony regarding clinical data that Dr. Rogers had no hand in creating. *See Hirst*, 544 F.3d at 225 n.6 ("Most witnesses who are called to testify in a trial have personal knowledge of the facts about which they're called upon to testify."); *DIJO*,

351 F.3d at 686. Cordis's intention to offer undisclosed expert opinion testimony from Dr. Rogers is made even more apparent from the scientific articles Cordis included in its proffer: each of Articles 9 to 14 are also attached to the expert report of one of Cordis's *two other* medical experts, Dr. Daniel Simon, and Dr. Simon's report spends several pages discussing them.[2] (Ex. 2 at 11-14 and 18-19, Exs. E, F, I, K, Q, R)[3] In addition, Dr. Nigel Buller, yet another medical expert from whom Cordis plans to elicit trial testimony, discusses Articles 13 and 14 in his expert report as well. (Ex. 3 at 22-23) Both Drs. Simon and Buller also discuss in their respective expert reports the options available to physicians for treating small vessel disease. (Ex. 2 at 17-20; Ex. 3 at 22-23) At best, Dr. Rogers's proffered expert opinion testimony regarding these topics is cumulative.

Dr. Rogers's proffered expert opinion testimony is prejudicial because Cordis did not follow the procedure set forth under the Federal Rules for disclosing expert opinions. Fed. R. Civ. P. 26(a)(2). Cordis provided no notice to BSC that it planned to have its *fact witness*, Dr. Rogers, provide expert opinions based on his specialized background in medicine. Nor did Dr. Rogers provide any indication at his deposition that he may provide the type of expert opinions at trial as set forth in Cordis's proffer. Short of mind-reading, there was no way BSC could have known that Cordis intended to have Dr. Rogers provide duplicative expert opinion testimony regarding the interpretation of clinical data such as the ones seen in Articles 9 to 14. BSC was

---

[2] As an additional basis for precluding Dr. Rogers from testifying about Articles 9 to 14, Cordis did not produce any of those articles until November 2010, well after the September 1, 2010, deadline for fact discovery. (D.I. 59 at 1)

[3] To save the Court from unnecessary paper, BSC has only submitted the main reports of Drs. Simon and Buller, and the cited exhibits. BSC would be happy to provide the Court with the remainder of Drs. Simon and Buller's exhibits upon request.

not afforded a full and fair opportunity to examine Dr. Rogers properly on his proffered testimony at his deposition.[4]

On the contrary, Cordis will not be prejudiced if this Court precludes Dr. Rogers from giving opinion testimony regarding his interpretation of clinical trials or treatment options for small vessel disease. Since Drs. Simon and Buller disclosed those trials and treatment options in their expert reports, to the extent that any such testimony is permitted (the Court is already aware of the parties' disagreement with respect to the relevance and admissibility of certain clinical trials), they can discuss them at trial. Because these topics were disclosed in Drs. Simon and Buller's respective reports, BSC had the opportunity to examine them on these topics at their depositions. Such was not the case with Dr. Rogers, for whom Cordis provided no such notice.

## II. Dr. Rogers Should Not Be Permitted To Testify Regarding His Interpretation Of Clinical Data Because It Does Not Relate To His Designated Trial Topics

### A. Testimony Regarding Dr. Rogers's Interpretation Of Clinical Data Is Not Relevant To "The Design And Development Of The 2.25mm Cypher Stent"

This Court should reject Cordis's attempt to justify its ambush tactics by relying on the vaguely worded description in its Second Amended Initial Disclosures for *fact witnesses*. (Ex. 1 at 3) 

---

[4] Cordis's reference to this Court's ruling on an expert testimony objection in a prior case misses the point. (D.I. 165 at 2) First, the witness in the earlier case, Aron Anderson, was an employee of Surmodics; he was not Dr. Rogers's predecessor. Second, in the cited instance, this Court afforded some latitude in allowing Cordis's witness to provide opinion testimony reasonably related to events that the witness had personally observed. The facts are distinguishable here, where Dr. Rogers intends to testify regarding studies in which he did not personally participate or observe.



(D.I. 165, Ex. 2 at 130:7 to 131:4 (emphasis added))

(*Id.*, Ex. 2 at 144:1-16 (emphasis added))

Nowhere in Dr. Rogers's testimony did he state that he interpreted clinical data (and certainly not Articles 9 to 14) for the design and development of the 2.25mm Cypher stent. On the contrary, Dr. Rogers admitted he was not involved in *any* clinical trials relating to the 2.25mm Cypher stent; he did not even know what types of clinical trials were required by the FDA for approval of the 2.25mm Cypher stent, including the pivotal SIRIUS 2.25 study. And when asked about the SES-SMART study, Dr. Rogers testified that he didn't remember the details. (*Id.*, Ex. 2 at 160:11 to 161:7) But Cordis's proffer suggests that it will seek to elicit new and different testimony from Dr. Rogers concerning all of these highly technical subjects.

7

(*Id.* at 5) Cordis should not be permitted to shelter Dr. Rogers at his deposition, but allow him to testify expansively about those same highly technical subjects at trial. Further highlighting its surprise tactics, Cordis's proffer reveals its intention to have Dr. Rogers testify about presentations he allegedly gave to groups of physicians regarding clinical trials. (*Id.* at 5-6, Exs. 3, 4, 5) But Cordis had not produced those presentations until ***April 20, 2011, when it filed its proffer*** — well after fact discovery closed and after Dr. Rogers's April 1, 2011 deposition.

Cordis also cannot justify its expansion of Dr. Rogers's designated trial testimony because he "regularly reviews clinical data from studies involving the Cypher stent and other competitive products."[5] (*Id.* at 4) Cordis offers no nexus between the design and development of the 2.25mm Cypher stent and the purported fact that Dr. Rogers "regularly reviews clinical data." As Dr. Rogers admitted at his deposition, the design for the 2.25mm Cypher stent was already in place when he arrived at Cordis (*Id.*, Ex. 2 at 131:13 to 132:1), [Redacted]

(*Id.*, Ex. 2 at 130:20 to 131:4) According to Dr. Rogers, even the pivotal clinical study used to support the FDA application for the 2.25mm Cypher stent, SIRIUS 2.25, was likely concluded by the time he joined Cordis. (*Id.*, Ex. 2 at 137:14-20)

Even if the Court were inclined to recognize a narrow exception to the prohibition of expert opinion testimony under FRE 701(c), preclusion is nonetheless warranted here because the expert testimony that Cordis seeks to proffer from Dr. Rogers regarding his interpretation of

---

[5] According to Cordis, Dr. Rogers "discusses [clinical study] topics with other physicians, including physicians employed by Cordis and physicians outside the company." (D.I. 165 at 4) To the extent Cordis intends to solicit such testimony from Dr. Rogers regarding discussion he has had with others, BSC objects on the grounds of inadmissible hearsay. *See Stelwagon Mfg. Co. v. Tarmac Roofing Sys. Inc.*, 63 F.3d 1267, 1274-75 (3d Cir. 1995) (holding that the trial court erred in admitting hearsay testimony of the plaintiff's employee regarding conversations he had with customers).

clinical data, such as Articles 9 to 14, is not based on any personal experience he had in obtaining that data and because those articles and that testimony do not relate to the testimony for which he was designated in Cordis's Second Amended Initial Disclosures.

### B. Testimony Regarding Dr. Rogers's Interpretation Of Clinical Data Is Not Relevant To Cordis's Decision To Launch The 2.25mm Cypher Stent

In yet another strained attempt to justify its proffer of undisclosed expert testimony from Dr. Rogers, Cordis contends that "Dr. Rogers may testify about clinical data *supporting* Cordis's decision to launch the Cypher 2.25 mm stent system." (*Id.* at 5 (emphasis added)) To be sure, Dr. Rogers might conceivably testify regarding the *factual* bases for why Cordis decided to launch the 2.25mm Cypher stent (if Dr. Rogers participated in that decision and has personal knowledge of it, and such testimony is otherwise admissible). Such testimony might be consistent with the subject matter for which Dr. Rogers was designated, namely "Cordis's reasons for introducing the 2.25mm Cypher stent." (Ex. 1 at 3) However, the scope of the anticipated testimony based on Cordis's proffer ventures well past his designated testimony and into the realm of expert opinion testimony, for which Dr. Rogers was not designated and for which Cordis has not complied with the Federal Rules regarding disclosure.

In its proffer, Cordis does *not* say that the clinical data that Dr. Rogers may testify about *were* "Cordis's reasons for introducing the 2.25mm Cypher stent." Rather, Cordis coyly suggests that "Dr. Rogers may testify about clinical data *supporting* Cordis's decision to launch the Cypher 2.25 mm stent system." (D.I. 165 at 5 (emphasis added)) Cordis chooses its words carefully with good reason; Dr. Rogers did not make the decision to launch the 2.25mm Cypher stent, and Cordis did not identify him as having been involved in that decision. Instead, all of Cordis's witnesses stated that Cordis's Company Group Chairman, Mr. Seth Fischer, made that

9

decision. (Ex. 4 at 51:15-22; Ex. 5 at 60:14-22)[6] Mr. Fischer is expected to appear at trial, and he is also designated to testify regarding "Cordis's reasons for introducing the 2.25mm Cypher stent." (Ex. 1 at 4) The identification of Dr. Rogers also as a witness to testify regarding "Cordis's decision to launch the Cypher 2.25mm system" is merely a pretext for allowing Dr. Rogers to provide expert opinion testimony regarding his interpretation of "data from clinical trials comparing various drug-eluting stent systems," without disclosing Dr. Rogers as an expert witness. Mr. Fischer alone is perfectly capable of testifying about *his* decision to launch the 2.25mm Cypher stent.

Aside from constituting improper expert testimony, not being within scope of his designated testimony, and possibly being hearsay, testimony regarding *post-hoc* clinical data that merely purports *to support* Cordis's decision to launch the 2.25mm Cypher stent is irrelevant to the issue of damages. Indeed, Cordis has already agreed that it will not argue that the 2.25mm Cypher stent was launched for public safety reasons. (Ex. 6 at 35:11-16)

Lastly, Cordis's reference to the fact that its marketing material contains information based on clinical studies is a red herring. (D.I. 165 at 4-6) Cordis's marketing material speaks for itself. That Dr. Rogers may have informed the marketing group of data contained in Cordis's marketing material does not open the door for Cordis to have Dr. Rogers give his expert opinions on any tangential aspect of that data, including the underlying study, or elicit expert opinions regarding his interpretation of that data. Cordis should not be permitted to use its marketing material as a Trojan horse for sneaking in undisclosed expert opinion testimony.

---

[6] For the Court's convenience, BSC will only provide the relevant excerpts from Mr. Fischer's and Mr. Coletti's depositions. BSC would be happy to supply the entire transcripts of both at the Court's request.

### III. Dr. Rogers Should Not Be Permitted To Testify Regarding The Data That Cordis Provides To Physicians Regarding The Cypher Stent

According to its proffer, Cordis plans to ask Dr. Rogers to "testify regarding the data that Cordis provides to physicians regarding the delivery and deployment of the Cypher stent systems" and the "attributes of the Cypher 2.25 mm stent as they compare to competitive stent products." (D.I. 165 at 3) Once again, Cordis seeks to elicit undislcosed expert opinion testimony well beyond the subject matter for which Dr. Rogers was identified as a fact witness. It is irrelevant that "Dr. Rogers's group is responsible for competitive testing" (*Id.* at 4); Dr. Rogers's proffered testimony extends well beyond his personal experiences. Cordis also did not inform BSC that Dr. Rogers would be providing testimony on those topics, which prevented BSC from questioning Dr. Rogers on those topics at his deposition. Even more prejudicial, Cordis again seeks to rely on previously undisclosed, unproduced materials in connection with such testimony. (*Id.*, Exs. 3 and 4)

Accordingly, the Court should preclude Cordis from offering undisclosed expert opinion testimony from Dr. Rogers. To the extent that Cordis seeks to have Dr. Rogers testify regarding statements he and others at Cordis have made to others, such testimony should be precluded as inadmissible hearsay; instead, should Dr. Rogers testify at all, that testimony should be limited solely to his personal experience and first-hand knowledge, and should not encompass testimony regarding: (1) data that Cordis provides to physicians regarding the delivery and deployment of the Cypher stent systems; and (2) the attributes of the Cypher 2.25mm stent as they compare to competitive stent products.

11

## CONCLUSION

For the foregoing reasons, BSC respectfully requests that the Court preclude Cordis from proffering expert opinion testimony from Dr. Rogers, including:

- Testimony regarding interpretation of clinical data, including interpretation of Articles 9 to 14;

- Testimony regarding the options available to physicians for treating small vessel disease (including other competitive products about which Dr. Rogers has no personal knowledge); and

- Testimony regarding discussions of clinical data and treatment options that Dr. Rogers or others at Cordis has had with other people.

April 25, 2011

YOUNG CONAWAY STARGATT & TAYLOR LLP

/s/ *Karen L. Pascale*

John W. Shaw (No. 3362) [jshaw@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs,
Boston Scientific Corporation and
Boston Scientific Scimed, Inc.*

*Of Counsel*:

Paul A. Bondor
DESMARAIS LLP
230 Park Avenue
New York, New York 10169
(212) 351-3400

Young J. Park
Jeanne M. Heffernan
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

# **CERTIFICATE OF SERVICE**

I, Karen L. Pascale, Esquire, hereby certify that on April 29, 2011, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick [sbalick@ashby-geddes.com]
> Tiffany Geyer Lydon [tlydon@ashby-geddes.com]
> Andrew C. Mayo [AMayo@ashby-geddes.com]
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on April 29, 2011, I caused a copy of the foregoing document to be served by ***E-Mail*** on the above-listed counsel and on the following non-registered participants in the manner indicated:

> ***By E-Mail***
>
> Gregory L. Diskant [gldiskant@pbwt.com]
> Eugene M. Gelernter [emgelernter@pbwt.com]
> Kathleen M. Crotty [kmcrotty@pbwt.com]
> Diana Breaux [dbreaux@pbwt.com]
> Jason S. Gould [jgould@pbwt.com]
> PATTERSON, BELKNAP, WEBB & TYLER, LLP
> 1133 Avenue of the Americas, 20th Floor
> New York, NY 10036

> YOUNG CONAWAY STARGATT & TAYLOR LLP
>
> */s/ Karen L. Pascale*
> _____
> Karen L. Pascale (No. 2903)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19801
> (302) 571-6600
> kpascale@ycst.com
>
> *Attorneys for Plaintiffs,*
> *Boston Scientific Corporation and*
> *Boston Scientific Scimed, Inc.*